**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**AMERICAN WELL CORPORATION,**

Plaintiff,

v.

**INDEGENE LIMITED,**

Defendant.

Civil Action No. 25-1318 (ZNQ) (JTQ)

**OPINION**

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendant Indegene Limited ("Defendant" or "Indegene"). (ECF No. 11.) Defendant filed a memorandum of law in support of its Motion. ("Moving Br.," ECF No. 11-1.) Plaintiff American Well Corporation ("Plaintiff" or "Amwell") filed an Opposition (ECF No. 17), to which Defendant replied (ECF No. 18). The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT** Defendant's Motion.

## I. BACKGROUND AND PROCEDURAL HISTORY

This action arises out of a contract dispute between Amwell and Indegene. Under a partner agreement between the parties (the "Partner Agreement"), Defendant was authorized to license and sell Plaintiff's software to third-party customers. ("Compl.," ECF No. 1 ¶ 26.) As will be explained in more detail below, the dispute centers on whether the Partner Agreement requires

Defendant to pay a Subscription Fee to Plaintiff even though Defendant did not license or sell Plaintiff's software to any third-party customers.

As alleged, Plaintiff develops and maintains software application platforms for the provision of telehealth services. (*Id.* ¶ 2.) One of Plaintiff's subsidiaries, Conversa Health LLC ("Conversa"), has proprietary software "that enables individual end users to engage in automated digital conversations about their health, health education, and related matters." (*Id.* ¶ 27.) Defendant offers research, development, and management services to healthcare and pharmaceutical companies. (*Id.* ¶ 7.)

On December 23, 2021, Plaintiff and Defendant entered into the Partner Agreement. (*Id.* ¶ 17.) Pursuant to Section 2.1 of the Partner Agreement, Defendant was granted a "non-exclusive, non-transferable license and right to use, market, resell and distribute the Conversa Services in the [United States]." (Partner Agreement (DX B) § 2.1; *see also* Compl. ¶ 26.)[1] "Conversa Services" is defined in the Partner Agreement as:

> (a) the hosting, management, and operation of Conversa's proprietary Software-as-a-Service ("SaaS") that enables Conversa to provide Customer with automated, interactive digital conversation services (or "chat" sessions) with End Users, including all know-how, devices, methods, processes, other technologies and inventions, technical or functional descriptions, requirements, documentation, instructions, deliverables, user design appearance, content used in chat sessions, and content and functionality of Customer dashboards and related items used by Conversa to provide such Services; (b) related services provided by Conversa to Customer, as described in the applicable Service Order; and (c) any optional Implementation Services provided by Conversa to Customer pursuant to an applicable Service Order.

[1] References to "DX" refer to the Exhibits accompanying Defendant's Declaration of Cameron A. Smith at ECF Nos. 11-2–6 and attached to Defendant's Motion to Dismiss. References to "PX" refer to the Exhibits attached to Plaintiff's Complaint at ECF Nos. 1-1–4.

(Compl. ¶ 27; *see also* Partner Agreement (DX B) § 1.4.)

Plaintiff and Defendant also executed Service Order #1 the same day as the Partner Agreement. (*Id.* ¶ 31.) According to Plaintiff, the Service Order "concerned the configuration and development by Amwell and Indegene Limited of a program with a focus on medication adherence for Indegene Limited's customers." (*Id.* ¶ 34.) The development and implementation of this program was projected in the Statement of Work attached to the Service Order. (*Id.* ¶ 36.) The term of the Service Order was for 12 months and had an annual subscription fee of $250,000. (*Id.* ¶ 38.) The annual fee was divided into two payments, with 50% of the annual fee payable on March 1, 2022, and the remaining 50% payable on July 1, 2022. (*Id.* ¶ 39.)

Consistent with the Service Order, Plaintiff issued its first invoice to Defendant on March 1, 2022 for $125,000. (*Id.*¶ 48.) On July 1, 2022, Plaintiff issued its second invoice to Defendant for the remaining $125,000. (*Id.* ¶ 50.) According to Plaintiff, Defendant "has failed to timely pay the monies owed to Amwell under the Partner Agreement and Service Order . . . and efforts by Amwell to collect payment from Indegene Limited have been ignored, rejected, or otherwise unproductive." (*Id.* ¶ 52.)

Instead of making the requested payments, Defendant sent a letter to Plaintiff on July 12, 2023, informing Plaintiff that it was "unable to comply with the request for payment due to the lack of service provided." (Indegene Letter (PX C) at 1; *see also* Compl. ¶ 53.) According to Defendant's letter, "[t]he primary and sole objective under the said Partnership Agreement . . . is to enable Indegene to offer to its Customers a license to use specified Conversa Services, Conversa consulting services to customize and configure Conversa Services, and related support and ancillary services." (Indegene Letter (PX C) at 1.) Because Defendant did not have any customers

who licensed the Conversa products or services, Defendant maintained that it did not have a valid Service Order in compliance with Section 1.19 of the Partner Agreement. (*Id.*)

That provision states in full:

> "Service Order" means the customized ordering document to be executed by Conversa and Partner that corresponds to each Statement of Work that includes specified Conversa Services, including any optional Implementation Services. For the avoidance of doubt, each Service Order between Conversa and Partner will be identical to the applicable corresponding Statement of Work between Partner and Customer covering the scope and details of any applicable license for Conversa Services (except the pricing and payment terms in the Statement of Work will be agreed between Partner and Customer.) A copy of the current version of the Service Order is set out in Exhibit 5.

(Partner Agreement (DX B) § 1.19.) Defendant went on to request Plaintiff withdraw its request for payment because "it does not align with the principle of [the Partner] Agreement mutually agreed and executed." (Indegene Letter (PX C) at 2.)

Thereafter, Plaintiff sent a letter to Defendant putting it "on formal notice that Indegene Limited is in material breach of the Partner Agreement and Service Order due to non-payment of annual subscription fees." (Compl. ¶ 55.) According to Plaintiff, "[t]he payment obligation for the subscription fees in the Service Order is triggered irrespective of Indegene's use or nonuse of [Amwell's] product." (Amwell Letter (PX D) at 2.)

To date, Defendant has not paid the annual subscription fee. (Compl. ¶ 57.) Accordingly, Plaintiff filed this action against Defendant alleging a single cause of action for Breach of Contract. The Partner Agreement is governed by Delaware Law. (Partner Agreement (DX B) § 14.2.)

## II. SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction over this action given the diversity of the parties and the value of the claim at issue exceeding $75,000 pursuant to 28 U.S.C. § 1332(a).

## III. LEGAL STANDARD

### 1. Rule 12(b)(6)

A district court may grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. When considering a motion under 12(b)(6), the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States.*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). Moreover, the court must accept as true all the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); see also *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). "However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis added). Thus, a court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion . . . if the

plaintiff's claims are based on the document." *Beteiro, LLC v. BetMGM, LLC*, 626 F. Supp. 3d 789, 795 (D.N.J. 2022).

2. Delaware Contract Law[2]

Under Delaware law, to survive a motion to dismiss for a breach of contract claim, "a plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *Weyerhaeuser Co. v. Domtar Corp.*, 61 F. Supp. 3d 445, 449 (D. Del. 2014) (citation modified). "When interpreting a contract, Delaware courts read the agreement as a whole and enforce the plain meaning of clear and unambiguous language." *Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, 261 A.3d 1199, 1208 (Del. 2021). A contract is ambiguous "when the provisions in controversy are reasonably or fairly susceptible of different interpretations." *AJZN, Inc. v. Yu*, Civ. No. 13-149, 2015 WL 331937, at *7 (D. Del. Jan. 26, 2015) (citation modified). "However, if one of two proffered meanings is unreasonable, there is no ambiguity." *Id.* (citation modified). "An interpretation is unreasonable if it produces an absurd result or a result that no reasonable person would have accepted when entering the contract." *Manti Holdings, LLC*, 261 A.3d at 1208. The parties' disagreement over the meaning of the terms does not render the contract ambiguous. *See id.* Determining whether ambiguity exists "lies within the sole province of the court." *Scheider Nat'l Carriers, Inc. v. Kuntz*, Civ. No. N21C-10-157, 2022 WL 1222738, at *12 (Del. Super. Ct. Apr. 25, 2022).

## IV. DISCUSSION

Defendant principally argues that the Complaint should be dismissed because Plaintiff has not sufficiently alleged a breach of the contract. (Moving Br. at 9.) Specifically, Defendant argues

[2] The Partner Agreement includes a choice-of-law provision that identifies Delaware law as the governing law. (Partner Agreement (DX B) § 14.2.)

that Section 5.1 of the Partner Agreement requires the existence of a third-party customer before Defendant was required to make any payments to Plaintiff. (*Id.* at 11.) Section 5.1 states in its entirety:

> In consideration for Conversa providing the Conversa Services to Partner on behalf of its Customers, the fees to Partner ("***Subscription Fees***") will be calculated for each Customer in accordance with Exhibit 1, Services and Pricing, and, on an individual Customer basis, will be reflected in the applicable Service Order. Unless otherwise stated in an applicable Service Order, the Subscription Fees will be invoiced in advance. The fees for the Implementation Services (if applicable) will be determined under a Service Order and invoiced in accordance with the terms stated therein. For purposes of this Agreement, the Subscription Fees, the Implementation Services Fees, and any additional fees described in the applicable Service Order are referred to collectively as the "***Fees.***" Unless otherwise agreed to in a Service Order, Partner shall pay all Fees to Conversa within thirty (30) days following Partner's receipt of the electronically submitted invoice. Unpaid invoices are subject to a finance charge of 1.5% per month on any outstanding balance, or the maximum permitted by law, whichever is lower, plus all expenses of collection. Partner shall be responsible for all taxes associated with Services other than taxes based on Conversa's net income. In addition to any other remedies available, Conversa reserves the right to suspend the Conversa Services if Partner fails to make any payment due hereunder in a timely manner.

(Partner Agreement (DX B) § 5.1.) According to Defendant, Section 5.1 provides that Defendant would pay "consideration" to Plaintiff because Plaintiff was providing the Conversa Services to Defendant "on behalf of [Defendant's] Customers." (Moving Br. at 11.) Moreover, Defendant argues that Section 5.1 indicates that the amount of "consideration" that Defendant would pay "will be calculated for each Customer" and "on an individual Customer basis." (*Id.*) The only reasonable interpretation of Section 5.1, Defendant claims, is that its payment to Plaintiff was conditioned on the existence of a "Customer." (*Id.*) And because Plaintiff did not allege the existence of any customers, Plaintiff has not sufficiently pled that there was a breach of the Partner Agreement. (*Id.* at 12.)

Plaintiff, in its Opposition, argues that the payment terms of the Partner Agreement are superseded by the payment terms in the Service Order. (Opp. at 11.) According to Plaintiff, Section 5.1 states that the Subscription Fees are to be invoiced in advance "unless otherwise stated in an applicable service order." (*Id.* at 12.) The Service Order, in turn, clearly states that half of the annual Subscription Fee was due on March 1, 2022, and that the other half was due on July 1, 2022. (*Id.*) Because nothing in the Service Order conditions payment on Defendant's ability to source customers, Plaintiff argues that the Subscription Fees were due on March 1 and July 1, 2022. (*Id.*) Alternatively, Plaintiff argues that its interpretation is reasonable, which at a minimum, creates ambiguity that cannot be resolved upon a motion to dismiss. (*Id.* at 18.)

After reviewing the Partner Agreement as a whole, the Court finds that any payment to Plaintiff was conditioned on the existence of a customer. While Plaintiff argues that the Service Order clearly and unambiguously required Defendant to pay the annual subscription fees (Opp. at 12), that argument presupposes the existence of a Service Order that complies with the terms of the Partner Agreement. The plain terms of the Partner Agreement reject such a presupposition.

Under Section 1.19, a Service Order is the "customized ordering document to be executed by Conversa and [Defendant] that corresponds to each Statement of Work that includes specified Conversa Services." (Partner Agreement (DX B) § 1.19.) The word "corresponds" clearly requires the existence of a "Statement of Work" before there can be a Service Order. Otherwise, a Service Order could not "correspond" to a Statement of Work and that term would be illusory and meaningless. *See Manti Holdings, LLC*, 261 A.3d at 1208 ("Contracts will be interpreted to give each provision and term effect and not render any terms meaningless or illusory.")

A "Statement of Work" is defined as "the customized configuration document between [Defendant] and Customer that includes the details and scope of any license to specified Conversa

Services, including any optional Implementation Services."[3] (Partner Agreement (DX B) § 1.8.) Similar language is provided in Section 1.19: "For the avoidance of doubt, each Service Order between Conversa and [Defendant] will be identical to the applicable corresponding Statement of Work between [Defendant] and Customer covering the scope and details of any applicable license for Conversa Services (except that pricing and payment terms in the Statement of Work will be as agreed to between [Defendant] and Customer.)"

In other words, a Statement of Work requires two parties: Defendant and a third-party customer. Without the third-party customer, there can be no Statement of Work. Without a Statement of Work, there can be no Service Order. And without a Service Order, Defendant is under no obligation to pay Plaintiff.

This interpretation of the Partner Agreement finds further support in Section 3.1, which states that each Service Order "must, at a minimum, specify the Customer identity, requested start date, term, and pricing of the Conversa Services[.]" (*Id.* § 3.1) Without a third-party customer, the Service Order would be unable to "specify the Customer identity." Moreover, as Defendant argues, Section 5.1 provides that the fees to Conversa will be in consideration for the Conversa Services that Defendant is providing "on behalf of its Customers," and that the fees "will be calculated for each Customer . . . and on an individual Customer basis." (*Id.* § 5.1.) Reading the Partner Agreement as a whole, it is clear that Defendant was only obligated to pay Plaintiff if there was a third-party customer.

Plaintiff further argues that Defendant's interpretation inserts a "condition precedent" in the Partner Agreement that does not exist. (Opp. at 13.) This argument misses the mark. As Plaintiff acknowledges, the relevant inquiry under the Partner Agreement is whether an

[3] "Customer" is defined as "an entity that enters into an Indegene Customer Agreement (defined below) with [Defendant] provides [sic] the Conversa Services." (Partner Agreement (DX B) § 1.6.)

enforceable Service Order exists that required Defendant to pay Plaintiff. (Opp. at 12.) But Plaintiff overlooks the relevant language in the Partner Agreement that establishes and defines a Service Order, which as previously explained, must include the identities of any customers and correspond to a Statement of Work between Defendant and a third-party customer. (Partner Agreement (DX B) §§ 1.8, 1.19, 3.1.) Without a customer, there can be no Service Order for which Plaintiff can expect payment.[4] And because Plaintiff has not alleged the existence of any customers, Plaintiff has not sufficiently pled that Defendant breached the Partner Agreement by its failure to pay. Accordingly, Plaintiff's breach of contract claim fails.[5] It will therefore be **DISMISSED** without prejudice.

## V. <u>CONCLUSION</u>

For the reasons stated above, the Court will **GRANT** Defendant's Motion to Dismiss. Plaintiff will be granted leave to file an Amended Complaint within 30 days of this Order, limited to curing the deficiencies identified in this Opinion. An appropriate Order will follow.

Date: December 19, 2025

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

---

[4] The Court separately notes that its interpretation of the Partner Agreement also comports with common sense. Given that the Partner Agreement provides only a *non*-exclusive right to sell, it is less likely that a licensee in Defendant's position would agree to pay what is effectively a minimum fee.

[5] Nor does Plaintiff's argument that the Partner Agreement is ambiguous carry any weight. "A contract is ambiguous if the court is able to reasonably ascribe multiple and different interpretation to a contract." *Schneider Nat'l Carries, Inc.*, 20222 WL 1222738, at *12. "However, if one of two proffered meanings is unreasonable, there is no ambiguity." AJZN, Inc., 2015 WL 331937, at *7. Here, Plaintiff asks the Court to credit its interpretation of the Partner Agreement as reasonable. (Opp. at 18.) The only way the Court could do so, however, would be by reading sections 1.8, 1.19, and 3.1 out of the Partner Agreement.